GARMO LEDDO et al., Plaintiffs in Error, *v.* WILLIAM A. HUGHES, Defendant in Error.

ERROR TO PULASKI.

The lender of money to the master of a vessel, to aid in making repairs, or to purchase supplies, must see that the amount advanced is reasonable and necessary.

The ports of the different States, under the maritime law, are, in respect to each other, foreign.

The wages of seamen only become due upon a successful termination of the voyage.

The maritime law has no application to flat boats, their pilots or navigators.

The lien given under our statute for repairing, &c., may arise upon contracts express or implied, and the acting master or supercargo may bind the vessel; but the party making the advances must show the necessity for them, and the proper application of them.

THIS cause was heard before W. A. DENNING, Judge, and a jury, at the October term, 1852, of the Pulaski Circuit Court.

The instruction asked for by the defendants in the court below, and which the court refused to give, is as follows: " The captain or supercargo of a vessel, as such, cannot bind the proprietors of the cargo and of the vessel, except it be for work done, supplies or materials furnished by mechanics, tradesmen, and others, for and on account of or towards the building, re-

pairing, fitting, furnishing, or equipping such boats or vessels, and wages of mariners or watermen and others, employed in the service of such boat; and that a contract made by said officer of a boat for other purposes not above enumerated, does not bind the owner."

J. Dougherty, for plaintiffs in error.

W. J. Allen, for defendant in error.

Scates, J.   Hughes brought this action of assumpsit, for money advanced to one Wallace, as master and supercargo of two flat boats, loaded with staves on the Ohio river, which belonged to the plaintiffs in error, and were bound for New Orleans, where the plaintiffs reside.

The declaration alleges, that these boats were in a wrecked condition, lying in the Ohio river, at the landing at South Caledonia, and at the instance of Wallace, and in consideration of the condition of the boats, the defendant in error loaned the master and supercargo, for and on behalf of plaintiffs, and for their special use and benefit, the sum of three hundred and fifty dollars, to purchase other flat boats for the reshipment of their cargoes.   And at the like instance and request of plaintiffs, and in consideration of the loan, and for the taking care of the boats and cargoes by defendant for ten days, they agreed to pay him the further sum of fifty dollars.   There was also a general count for money loaned, and another for work and labor, care and diligence.

The evidence shows that these boats were loaded with staves, a short distance above Caledonia, and were destined for New Orleans, the residence of the plaintiffs, who were owners of the boats and staves.   Wallace was in charge as pilot, and was compelled to put into the landing at Caledonia, on account of the boats springing aleak, and sinking to a water level. Here the boat hands became dissatisfied, and talked of leaving the boats, and attaching them for their wages.   Wallace had about thirty dollars in cash with him, part of which he gave to his son, and sent him home.

Wallace remained with the boats about nine days, and having failed in getting money of others, he borrowed of defendant three hundred and fifty dollars, twenty-four of which the defendant paid to the boat hands for wages, and the balance to Wallace, who agreed to pay defendant fifty dollars for the use of the money and for his care and labor for ten days in taking care of the boats, upon condition that if plaintiffs did not ar-

Leddo et al. *v.* Hughes.

rive in ten days and refund the borrowed money and pay the fifty dollars, that then the boats, staves, and tackle should become the property of the defendant, and should, in the mean time, be at his risk as security. The plaintiffs arrived within the ten days, but refused to pay the money, and afterwards replevied the boats, staves, &c. out of the hands of defendant, who retained and claimed them as his own under the contract.

The court, at the request of the defendant, instructed the jury, that if Wallace, as supercargo, employed defendant to take charge and care of the boats and staves for ten days, and that care was necessary to protect the boats and staves from loss, &c., and agreed to give him fifty dollars for that care, and the use of the money for ten days, and that defendant rendered the service, it would be binding on plaintiffs.

The court so modified an instruction asked by plaintiffs, as to make it in substance : That if the defendant has wholly failed to prove a promise of the plaintiffs "or their agent" to pay defendant, they must find for the plaintiffs.

The court refused to instruct for plaintiffs, that the captain or supercargo of a vessel could only bind the owner for supplies, material, and work, necessary for building, repairing, fitting, furnishing, or equipping, and the wages of those employed in the navigation of the vessel.

The jury found a verdict for defendant for four hundred and twenty-seven dollars and twelve cents. A new trial was refused.

The special count for the loan to Wallace as master and supercargo, is evidently framed, and the recovery is had upon the principles of the maritime law. That law empowers the master of a vessel, in a foreign port, to have necessary repairs of a vessel made, and to purchase the necessary supplies; and for these purposes he may borrow money on the credit of the owner; and the lender will not be held responsible for its faithful application. Arthur *v.* Barton, 6 Mees. & Wels. R. 188; approved Johns *v.* Simons, 2 Ad. & Ell. N. S. R. 424; Stonehouse *v.* Grant, Ib. 431; Abbott on Shipp. 100, 170, n. 3.

It is, however, incumbent on the lender to show the existence of the necessity. Abbott on Shipp. 107, 170, 171, note; The Ship Fortitude, 3 Sumn. R. 233; Arthur *v.* Barton, *supra;* Webster et al. *v.* Seekamp et al. 4 Barn. & Ald. R. 352; Carey *v.* White, in Abbott on Shipp. 104–107. And the amount must be shown to be reasonable, according to the existing necessity. For the power of the master is restricted in amount to the necessary wants of the ship; and a great disproportion between those wants and the sum borrowed, would raise a pre-

sumption of fraud and collusion on the part of the creditor. This strictness arises from the facility of misapplication, and the temptation to abuse, to which the power is incident. Abbott on Shipp. 170, n. 3.

The lender being present, has greater facilities for judging of the extent of the amount, and so regulating his loan within reasonable bounds.

It is shown that one hundred and sixty or two hundred dollars would have purchased two new boats. But it is not shown that the old boats could not be repaired; nor what amounts would have been needed for that purpose. Ship Fortitude, 3 Sumn. R. 233. The defendant advised Wallace to purchase new boats, and it may be possible the amount of the loan was with that view; but even in that case, defendant has not shown that the sum loaned was necessary. But I have met with no case that goes so far as to authorize a master to abandon his vessel; or sell it, and purchase a new one with the proceeds of the sale, or to borrow money for that purpose, either upon the credit of the owner, or upon the hypothecation of the vessel wrecked. Nor do I believe the law would sanction a loan for such a purpose, or confer such powers upon a master, though under very strong and peculiar circumstances of necessity, he might sell the vessel. See Abbott on Shipp. 2 to 12, and notes.

This transaction cannot be sustained as a sale, therefore, even had the form of action so presented the question; nor can the loan be sustained to a greater amount than may be shown to be necessary to meet the wants for repairs, &c., under the maritime law, as set forth in the special count. The pilot had thirty dollars in hand, and only twenty-four is shown to be due to boatmen; how much more would have repaired the boat is left uncertain; neither is there any satisfactory reason given why defendant should be employed to take charge and care of the boats at an expense of five dollars per day, while, for any thing shown in the record, Wallace and the crew still remained in plaintiffs' employment. We cannot sanction such a power in Wallace to substitute others, at the expense of owners, to the performance of the care, duty, and labor of himself and crew. While he professes to act for his employers, it should not be merely in easement of his own duties.

It was objected under this count that this was to be considered as the home port of these boats, and the power of the master only extended to foreign ports, and in the absence of the owner. The ports in the different States are held to be, in respect to each other, foreign, in the sense of the maritime law. Chief Justice Marshall, in Selden *v.* Hendrickson & Pryor,

1 Brock. R. 398, held, that a master had the power, while in the port of New York, to bind the owner who lived in Richmond, Va., for repairs, and necessary supplies; and this we receive as the settled doctrine. Arthur *v.* Barton, 6 Mees. & Welsb. R. 188, approved in Johns *v.* Simons, 2 Ad. & Ell. N. S. 424; Stonehouse *v.* Grant, Ib. 431.

There is still another objection to the loan, under the maritime law, so far as the payment of wages to boatmen is relied on as an existing necessity. There is no proof that wages were due. Freight is the mother of wages by that law, and they do not become due upon a temporary interruption of the voyage, nor in case of a loss of the vessel; nor in case of desertion, but only upon a successful termination of the voyage. Smith's Mer. Law, 363, 366; Abbott on Shipp. 619, n. 1. There could, therefore, have been no wages due to the boatmen, and consequently this necessity did not exist.

The defendant has therefore failed in establishing the necessary facts and circumstances, to charge the plaintiffs upon the principles of the maritime law, with the contract of Wallace as master.

But, we are of opinion that the maritime law has no application to these flat boats, their pilots and navigators; even should it be extended to the steamers and vessels engaged on the inland navigation of the rivers and lakes. The Supreme Court of Missouri in Johnson *v.* Strader & Thompson, denied its application to inland navigation. 1 Mo. Rep. 256. The flat boats in that case were engaged in freight as common carriers; in the case before us, the loading, as well as the boats, belongs to the plaintiffs.

It is also contended, that the defendant is entitled to recover under the two last counts, for money loaned, and for work and labor, &c. By the statute (R. S. of 1845, p. 71, § 1), a lien is given to mechanics, tradesmen, and others, upon boats and vessels of all descriptions, whether built, repaired, equipped, or running, upon any of the navigable waters of this State, for all debts contracted by the owner, master, supercargo, or consignee, for work, supplies, or materials; and such debts shall have the preference of all debts, except the wages of those employed in navigating such boats and vessels. This provision in some respects is broader than the maritime law, in relation to liens for work, materials, and supplies. This lien may arise upon contracts express or implied, and in the home port; and embraces those created by owner, master, supercargo, and consignee. For these purposes, the pilot may bind the boat, when he acts in the capacity of master or supercargo. But the power

Leddo et al. *v.* Hughes.

personally to bind the owner, must be sought in the principles · of the common law, the mercantile or maritime law, when that obligation is to be superadded to the statutory lien upon the vessel.   With the exception of the creation and attachment of a lien upon the vessel, these contracts must depend upon the general principles of the law, and not upon the statute, for the extent of their personal obligation upon the principal, when made by an agent or servant.

The contract is made by the agent or servant, in this case, and the action is against his principals, and it involves the question as to the extent of his authority, arising by implication from the pressing necessities of the interest of his employers, to enable him to perform their work.   Admitting that a loan of money to the master of a vessel is to charge the owner, the lender must show under the statute the necessity for it, for " repairing, fitting, furnishing, or equipping," or for the payment of wages to " mariners, boatmen, and others," due for navigating the vessel ; and the application of the funds to these purposes. Or if the owner is sought to be charged with such loan under the common law, the lender must show such circumstances, as would raise a presumption of an implied authority from the owner to the master, as his servant.   And in doing this, the burden of proof is upon the lender to show such necessity to exist, and to the extent of the loan.   In this the defendant has failed in his proofs.

According to the principles here laid down, the instruction asked by the plaintiffs should have been given.   The modification of the other instruction should have been further qualified by adding the principal's authority to the agency, so as to make the act his own.

The question as to the reasonableness of the compensation promised by Wallace to defendant, should have been left to the jury, under the instruction given on his behalf.

Judgment reversed, and cause remanded.

*Judgment reversed.*